# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BPP RETAIL PROPERTIES, LLC, **Plaintiff**, v. NORTH AMERICAN ROOFING SERVICES, INC., *et al.*, **Defendants.** | **Civil No.** 13-1259 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, District Judge.

Plaintiff BPP Retail Properties, LLC ("BPP") moves to enforce defendant Carlisle Construction Materials, Inc. ("Carlisle") to perform its remaining obligations pursuant to the confidential settlement agreement ("settlement agreement") they reached. (Docket No. 170.) Carlisle opposes BPP's motion and moves to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. (Docket No. 172.) For the reasons set forth below, the Court **GRANTS** Carlisle's motion to compel arbitration. (Docket No. 172.) BPP's motion to enforce the settlement agreement is moot. (Docket No. 170.)

## I. Background

In October 2014, BPP and Carlisle settled the underlying litigation through a settlement agreement. (Docket No. 163.) Pursuant to the settlement agreement, "Carlisle will bear all

responsibility and expense for the complete replacement of the roofs of the Properties." (Docket No. 163, Ex. 1 at p. 5.)[1] The settlement agreement contains an arbitration clause. (Docket No. 163, Ex. 1 at p. 9.) It also provides that venue to enforce it shall be in this Court. Id. at p. 10. On December 16, 2014, the Court granted the parties' joint motion to dismiss the case with prejudice (docket no. 167), and judgment was entered accordingly (docket no. 169).

On June 4, 2018, BPP moved to enforce Carlisle's performance of its "remaining obligations" pursuant to the settlement agreement. (Docket No. 170 at p. 1.) Carlisle opposed BPP's motion and moved to compel arbitration for any dispute regarding "the quality, acceptability, completion or timeliness" of performance, as stipulated by the settlement agreement. (Docket No. 172 at p. 4.)

## II. Standard of Review

The Federal Arbitration Act ("FAA") establishes the validity and enforceability of written arbitration agreements. 9 U.S.C. § 2. "Whether or not a dispute is arbitrable is typically a question for judicial determination." Dialysis Access Ctr., LLC

---

[1] "Properties" refers to the following retail shopping centers owned and operated by BPP in the Commonwealth of Puerto Rico: Caguas Community Shopping Center, Dorado del Mar Shopping Center, Los Jardines Shopping Center, and San Lorenzo Shopping Center. (Docket No. 163, Ex. 1 at p. 2.)

v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296 (2010)). "The court 'shall' order arbitration 'upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue.'" Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4).

For a court to compel arbitration, a party must demonstrate "[1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and that [4] the claim asserted comes within the clause's scope." Dialysis Access Ctr., 638 F.3d at 375 (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations." HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

**III. Discussion**

Carlisle sufficiently demonstrates the four requirements necessary to compel arbitration. See Dialysis Access Ctr., 638 F.3d at 375. It is uncontested that "a valid agreement to arbitrate exists" between BPP and Carlisle, that Carlisle is "entitled to invoke the arbitration clause," and that both BPP and Carlisle are "bound by that clause." See id.; Docket No. 163, Ex. 1; Docket Nos. 172 and 173. BPP and Carlisle signed the settlement agreement with the arbitration clause, making BPP party to the arbitration dispute. (Docket No. 163, Ex. 1 at pp. 12-14.) Carlisle is entitled to invoke the arbitration clause as a party to the settlement agreement. See Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 258 F. Supp. 3d 255, 261 (D.P.R. 2017) (Besosa, J.) ("The second requirement . . . that the parties moving to compel arbitration be entitled to invoke the arbitration clause. . . . is satisfied where the movants are signatories or parties to the agreement containing the arbitration provision."). BPP does not challenge the validity of the arbitration clause, nor does it deny its or Carlisle's status as being parties to the agreement.

The dispute also falls squarely within the scope of the arbitration clause. See Dialysis Access Ctr., 638 F.3d at 375; Docket No. 173 at pp. 3-6. The arbitration clause states,

> If during the course of the performance of the Roof Work, disputes arise between BPP and Carlisle regarding the

> quality, acceptability, completion, workmanship, or the timeliness of the Roof Work, those disputes shall be resolved in the first instance by agreement between BPP and Carlisle of their representatives. In the event that BPP and Carlisle cannot agree on the resolution of the dispute, the dispute shall be referred to . . . a neutral third party decision maker (the "Arbitrator").

(Docket No. 163, Ex. 1 at p. 9.)[2] BPP disputes the timeliness of the roof work. (Docket No. 170 at pp. 3-6.) BPP contends that it "has still not received the requested dates or performance schedule," and that "Carlisle has not initiated an effort to perform its remaining Roof Work obligations." Id. at p. 5. BPP provides email communications between BPP and Carlisle to demonstrate the parties' efforts and failure to schedule the roof work. Id. at pp. 10-26. BPP, nonetheless, argues that this dispute is outside the scope of the arbitration clause. According to BPP, the arbitration clause does not apply to its claims because "Carlisle's failures or refusals to undertake *any* performance cannot have occurred and are not occurring during Carlisle's performance of Roof Work." (Docket No. 173 at p. 3.)

The dispute, however, arises precisely from the roof work, as supported by the email communications attached to BPP's motion. See Docket No. 170 at pp. 10-26 ("From our perspective almost three roofs are finished. We need to make sure the change orders are

---

[2] "Roof Work" refers to Carlisle's replacement of the roofs, as specified by the settlement agreement. Docket No. 163, Ex. 1 at p. 5; see id. at pp. 28-33.

processed and paid."). Because the parties have "a valid agreement to arbitrate," Carlisle is entitled to invoke the arbitration clause, BPP "is bound by that clause," and BPP's claims "come[] within the clause's scope," the Court is "satisfied that the making of the agreement for arbitration . . . is not at issue" and compels the parties to arbitrate. See Dialysis Access Ctr., 638 F.3d at 375; Rent-A-Ctr., W., Inc., 561 U.S. at 68. Accordingly, the Court **GRANTS** BPP's motion to compel arbitration. (Docket No. 172.)[3]

### IV. Conclusion

For the reasons set forth above, Carlisle's motion to compel arbitration is **GRANTED.** (Docket No. 172.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 15, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE

---

[3] Carlisle also requests that the Court "stay judicial proceedings pending arbitration." (Docket No. 172 at p. 1.) Because the Court issued a final judgment in December 2014, there are no judicial proceedings pending in this case. See Docket No. 169.